We'll turn to our next case of the day. I want to get the right name. Well, I just have Rios, but I think it's a hyphenated name. Rios v. Redding. This would not happen if we were in the courtroom. Yes, it would. Rios v. Redding. So, Ms. Bixby, are you ready to proceed? I am, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Elizabeth Bixby on behalf of Plaintiff Appellant Divinity Rios. And before I begin, I hope to reserve four minutes of my time for rebuttal. In Carlson, the Supreme Court held that a Bivens remedy is available when prison officials violate the Eighth Amendment by being deliberately indifferent to an individual prisoner's substantial risk of serious harm. That's why in Farmer, the Supreme Court easily applied Carlson to allow a Bivens remedy where prison officials ignored the substantial risk that a transgender woman would be sexually assaulted if she were placed in the general population of a men's prison. That's exactly what happened in this case, and that's why Ms. Rios' claim does not present a new Bivens context. That's also why the Third Circuit, when confronted with this exact same question in Bistrian, held that Farmer, quote, practically dictates that failure to protect claims are not new Bivens contexts, a conclusion it just recently reaffirmed in Shorter. But for the same reasons Farmer was an easy application of Carlson, so too is this case. The Supreme Court has explained that a case only presents a new Bivens context if the differences are meaningful, not trivial. And looking at each factor Abbasi provided for determining if a case presents a new Bivens context confirms that this case is not new. Take first the constitutional right at issue. It is the same. A prisoner's Eighth Amendment right to be free from prison officials' deliberate indifference to a substantial risk of serious harm. Consider next the extent of judicial guidance. Both types of deliberate indifference cases, medical care and failure to protect, have many decades of judicial precedent. Same with the generality or specificity of the official action. This case and Carlson both involve individual prison officials' decisions as to an individual prisoner's level of safety and risk of harm. Further, if you look at the intrusion into other branches of government, no greater risk of disruptive intrusion into other branches of government here than was the case in Carlson. And Carlson actually specifically addressed these concerns. Let me interrupt for a minute. When the Supreme Court has been pretty clear lately that expanding Bivens is disfavored. And so we sort of need to hang our hat on a case that where the Supreme Court has recognized this type, this category of Bivens remedy. And I'm trying to figure out if they keep saying there's been three instances where we've recognized it. And the case that I think comes closest of those three would be Calder. But they never mentioned Farmer, which Farmer is very close factually to what we're dealing with here. Can you give me your best explanation for why the Supreme Court didn't just list Farmer and say there's four Bivens categories if it indeed recognized this type of case as an approved Bivens claim? Yes, Your Honor. So I think that the Third Circuit got it right in Bistrian and again in Shorter when they said, we think that the Supreme Court didn't list Farmer separately because it is such a clear application of Carlson. So there's no need to sort of think about it as a fourth Bivens context. It is just an application of Carlson and one that happens to be very factually analogous to this case here. I would also say that looking at Farmer, although the Bivens availability question was not really presented in that case, the only way the damages claim in Farmer could have proceeded to trial, which it did, is if Bivens were available to her. And we know that the court specifically addressed arguments as to the damages claim. So we know they weren't just sending back, for example, the injunctive relief claim at issue in that case. And so the Supreme Court's, you know, omission or failure to mention Farmer in Abbasi and Hernandez when it lists prior Bivens context, again, I think is best explained by Farmer being an application of Carlson and not as a police would encourage this court to read that silence as somehow silently overruling Farmer. You know, quite the opposite. Well, it's hard to overrule Farmer on Bivens when Farmer never mentions Bivens. Right. And I think that that, again, is best explained by the Supreme Court thinking that it was such a clear application of Carlson of the availability of Bivens to that context. In the only way that the claim could have proceeded to trial, as it did, is if Bivens were available to her. And, you know, as this as this court mentioned in the previous argument, you know, this court considers itself bound by Supreme Court's decisions on issues, even where those issues were not directly addressed by the Supreme Court. I don't think that's our precedent. The Supreme Court just has really been emphasizing more and more drive by jurisdictional rulings, even binding precedent. And we had we had a case out of this court that went to the Supreme Court and they split five to four on jurisdiction when two years earlier they had heard a case with the identical, absolutely identical procedural context. And you could say, well, they implicitly accepted jurisdiction and really considered it and they hadn't ruled on jurisdiction. So it's an open question. And for justices, I mean, they took it very seriously. I think the notion that they implicitly decide things is an older view. The Supreme Court just does not go there anymore. And let me be clear. We were talking before about dictum, which is where they actually discuss something, but it's not necessary to the holding that they reach. What you're suggesting is where they never mention Bivens. Nobody and we pulled the briefs. Nobody briefed Bivens to them that it's somehow lurking in the record anyway. And we should assume that they decided it. I see those as very different concepts here. Sort of two responses to that point, Your Honor. The first is that it's true that the parties did not raise Bivens in Farmer, but they also didn't raise it in Carlson. And Supreme Court has repeatedly described whether Bivens is available as an antecedent issue. And they've addressed it even more now that the party has raised it. That's what happened in Carlson. That's what happened in Iqbal, for example. But even if you disagree with me, you can go to Carlson and you can look at it and you can see the Supreme Court discussing a case called Bivens, right? You can't do that with Farmer. So I think what you're arguing, and correct me if I'm wrong, is that we don't even need Farmer because Carlson itself standing alone already covers this context. Is that a fair assessment? That's exactly right, Your Honor. So whether you see Farmer as being an established Bivens context or not, you don't need to even decide that issue. That is how the Third Circuit approached it. But I think this court could easily decide this case based on Carlson being a clear, previously established Bivens context, and that the differences between this case and that case, none of them are meaningful, as the Supreme Court has described it. So in helping us decide whether Carlson, in fact, is the same context or whether this would be a different context, we've been pointed to certain things we should look at, which let's start with misconduct at issue. In Carlson, they had somebody who they observed suffering from a medical emergency and did not respond appropriately. They were deliberately indifferent to it. Make your best argument for why we got the same situation here. Your Honor, I push back on the idea that the Supreme Court has counseled that courts should look at the misconduct at issue. What they've actually said is that it's about the constitutional right at issue. And here, that's the Eighth Amendment right to be free from deliberate indifference, so substantial risk of serious harm on the part of prison officials, whether that serious harm is coming from another prisoner or it's coming from a medical issue that the prisoner is experiencing. So your interpretation is that because Carlson was Eighth Amendment, all Eighth Amendment issues are covered by Bivens? No, Your Honor. I think the Supreme Court has been very clear that the amendment alone is not sufficient, and we certainly would not advocate for that position. But here, we've got more than just the amendment, which, again, it's the constitutional right, a legal standard, which is deliberate indifference. We also have the generality or specificity of the... You stated the Supreme Court has said that they just look at the constitutional right. And what are you relying on? What language by the Supreme Court are you relying on in what case to support that interpretation? Yeah, so the quote, constitutional right at issue language, that is from Abbasi, and again, was reiterated in Hernandez. And what's the specific language? What's the specific language in Abbasi you're referring to? I'd like to make sure. So when they're discussing whether it's a new context, they say, is the constitutional right at issue the same? And I will be happy to pull up that citation. That would be 1860 in Abbasi. Yeah. I don't want to take too much of your time, but I'd really like to hear the specific language you're referring to, if you could quote the language from the Supreme Court. I'm not telling you, it's important to have a specific language. Yes. So when Abbasi is talking about the factors to consider when determining whether a case might differ in a meaningful way, they list a number of factors in a row. They start with a rank of the officers involved, and then they switch to the constitutional right at issue. So that's one in the sort of list of new context considerations that Abbasi lists at 1860. Okay. Are you saying that if it is the same constitutional right at issue, then it is governed by Bivens? No, your honor, we wouldn't say that. I don't think that factor alone is dispositive. It's certainly a very important one, but there are a number of other factors that Abbasi lists that are also very important, and I'd be happy to walk through those as well. That's all right. I thought you were making the broader claim that if it's the same right at issue, then it's governed, but okay. No, certainly not, your honor. You've clarified that for me. Sorry. What about the rank of the officers here? I mean, one of the arguments that's in the asthma attack in Calder that you were dealing with a relatively low level of prison officials, and here we're dealing with a team of people that have the specific task of figuring out appropriate housing arrangements, as I understand it. Is that a difference without a distinction or distinction without a difference? I would say that that is what Abbasi described as a trivial difference, not a meaningful difference. So, the defendants here are investigators. They're low-level prison officials. They're not high-ranking. They're not the director of the Bureau of Prisons. They're not, in Abbasi, the head of the FBI, the head of the INS, the attorney general. So, these both cases involve relatively low-level prison officials making individual decisions about a specific prisoner's individual case, and I see that my time is running short. I'd be happy to answer any further questions at this point or reserve the remainder of my time for rebuttal. Go ahead, Judge Becker. I do have a question, but again, I don't want to imperil you. Go ahead. Go ahead. I know you're wanting us to address this issue as opposed to the alternative argument for affirmance predicated on qualified immunity, but if we do address the appellee's alternative argument, how can we say at prong one of qualified immunity that the plaintiff has adequately alleged a constitutional violation when Farmer, the very case that you're primarily relying on, specifically lays out in articulating the deliberate indifference test is that an officer is not deliberately indifferent unless they are aware of the harm to the inmate, and in paragraph one of the complaint before he was represented, he specifically alleged that these investigators, the problem was that they did not what he specifically alleged against the Farmer test. How can we say that he has adequately alleged a constitutional violation? He's unfortunately seems to me on this issue has pleaded himself out of a possible constitutional violation. Why am I wrong about that? So two responses to that point, Your Honor. The first is that in many other places in the she told the defendants that she was being targeted because she was transgender and that she had a history of being sexually assaulted and that the defendants then intentionally and even said out loud that they were going to omit that information from their interview notes from their investigation and that despite being told of that information by Ms. Rios in the interview, they just ignored it. So that's appendix 12 and 13, also appendix 21, 22 and appendix 19. Those are all different portions of the complaint. Of course, again, as you noted, Ms. Rios was pro se below. I think any potential sort of confusing language in the complaint could be cleaned up on remand with a first amended complaint, she could move to amend. And I would say that any, you know, given the multiple places in the complaint where she does allege that she did specifically tell them of that information, you know, given the leniency that this court views pro se complaints with, she's clearly applied a violation of her clearly established right. And I see that I've run over my time. Let me ask you a question. I think Judge McHugh touched on it. But in comparing this to Carlson, that involved medical treatment. So the conduct of the officers would have no consequences with respect to the disciplinary part of their work, maintaining order among prisoners, things like that. In this case, it does. Does that difference in the effect on the running of the prison, the core mission of the prison, make a difference in distinguishing this from Carlson? I don't think it is. Let me just try to paraphrase a little bit more. Carlson would not have an impact on that operation of the prison. This case could. Is that enough to distinguish it? No, Your Honor. So I think that goes to the, you know, what Abbasi described as the risk of disruptive intrusion by the judiciary into the functioning of other branches. And Carlson didn't use very specific language when it said that's not a concern in allowing a given context because prison officials writ large, not just prison medical officials, not prison officials providing medical care, but prison status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate. And then Carlson also said that qualified immunity provides adequate protection against any potential disruptive intrusion. You know, the substantive standard for deliberate indifference is very high. So I don't think that that difference between this case and Carlson is a meaningful one, given the language that Carlson used that was fairly broad. And I also note that the former high ranking state prison officials, amici here, agree that allowing givens claims in this context will not interfere with what they said, the proper use of official discretion, and will only require them to conform to what is already their job duties. Thank you, Ms. Prose. If you'll turn on your mic. May it please the court. Susan Prose for the defendant, Appalese BOP investigators. Your honors, Farmer clearly did not, the court did not approve of Bivens remedy in Farmer. And I can speak further to that. But if I may, I would like to go right to what I believe is the pertinent issue in this case. And that is how Ms. Rios' claims are different from Carlson. One of the only three cases the Supreme Court specifically said that in which they had approved and implied Bivens remedy. I'd like to make five points for your consideration about these differences between Ms. Rios' claims and those in Carlson, the closest case to hers, obviously here. So, number one, Carlson was a deliberate indifference to medical care claim that resulted in a prisoner's death. And Ms. Rios' claims are for allegedly failing to protect her from sexual assault. So as the boss... Well, I mean, I think she couches it as deliberate indifference to the risk to her client of suffering physical harm from other inmates. So, I mean, there's certainly some analogous concepts in the two claims. Yes, Your Honor, I would agree. But again, the mechanism of injury, as Abbasi puts it, is different. And in fact, as the Abbasi court points out, Your Honor, even two deliberate indifference to medical care claims can arise in a different context. As the court explained... Where does Abbasi enlisting the criteria to determine whether or not the differences material refer to the mechanism of injury? That's in the discussion, Your Honor, of the distinction between the Eighth Amendment deliberate indifference claim in Carlson versus that raised in Malesko, I believe. And that is where they speak to that. So it's not specifically identified in the Abbasi factors, whether it's a different amendment, whether it's a different right, the rank of the officers, it's not identified as one of those criteria. Is that fair? So, Your Honor, first, it would be a different right at issue, right? A failure to protect claim versus a deliberate indifference to medical care claim. So a different right impacted within the Eighth Amendment structure. But within that list of... And they were exemplars only, of course, non-dispositive, but exemplary. Right. And so in that context, I do not believe the mechanism of injury language appears. I do want to be clear about that. All right. But what does appear in dealing with the... Whether it's a different amendment, which obviously it's the same amendment, whether it's the same right, Farmer versus Brennan, Castillo versus Day, probably several dozen, maybe even hundreds of our published 10th Circuit and Supreme Court opinions identify the right as commonplace as a protection under the Eighth Amendment against deliberate indifference to safety or health. That is precisely the same right that was applicable in Carlson, health and safety in our case, or informal, right? So if we identify the right based on these very, very commonplace articulations of what the Eighth Amendment right is, it certainly would easily fall easily within the coverage of that right, as are many, many, many presidents that have articulated it, right? So, Your Honor, I think that the important thing here is to consider what Abbasi said about even small differences. So it isn't enough to say generally there's deliberate indifference here. Carl... The right has to be read more closely than that, given that even small differences can create a new context. And the Abbasi court was very clear when they described the claim in Carlson as one for deliberate indifference to medical care to an inmate's asthma, resulting in that I think it's an extremely critical point that this claim arises in a failure to protect context. So I do think it is different, and I do think it would not be consistent with Abbasi to view that deliberate indifference generally, that standard more generally. I think that would be at odds with how Abbasi views the new context analysis. Well, as I read the discussion of generality and specificity of the official action when I'm looking at Abbasi, I understood that to mean whether we're dealing with a general policy or whether we're dealing with specific action as to a specific prisoner. Do you read that differently? I think I'm thinking of a different portion of the Abbasi opinion. I think, Your Honor, where my focus here is right now is that the court narrowly defined what the rulings were in the three cases that it approved, and it said small differences here in context compared to these cases matter. So I think we're making a slightly different point, Your Honor. So, and could you list for me the differences between Carlson and this case that you think render it in a different context under Abbasi? You noted one that it's what you call the mechanism of injury, but that's not, well, they discuss the mechanism of injury when they're talking about what the circuit court case did, and then they reject that analysis. So I'm not sure how much to put into that. Excuse me, Your Honor. I didn't mean to interrupt. Let me phrase it a little bit differently. It's a different claim. It's a deliberate indifference to safety versus a deliberate indifference to medical care. And I think that's really the core point here in the Abbasi analysis. But if I may go on and list the additional points that I think do differentiate Ms. Rios' claim from the claim in Carlson. So first, I bear in mind here that one of the factors that Abbasi considered in distinguishing cases is that a new context can be present if there are potential special factors that previous Bivens cases did not consider. And so that brings me to my second distinction here, and that is that after Carlson, Congress specifically legislated in the area of inmate sexual assault claims in the Prison Rape Elimination Act and its amendments, and chose not to create a damages remedy for prisoner sexual assault claims. That, I think, is another key distinction. Thirdly... Couldn't that be just because Congress thought they've got a cause of action? Wouldn't that have been a natural assumption by Congress at that time? Well, they certainly did not say that, Your Honor. There's a reference only to Farmer in the preamble to the Prison Rape Elimination Act. And it just simply points to Farmer and describes that point as stating that sexual assault in prisons is a problem. But they did not say, hey, we're recognizing, of course, that there's a Bivens remedy here, a damages remedy here, and therefore, we're not going to include that in our remedial scheme. In fact, the PREA was the result of extensive compromise on both sides and many discussions. And so I don't think it would be in that legislation, the idea that Congress assumed there would be a Bivens remedy. None of that discussion mentioned Farmer? We can look at the congressional record as well as committee reports for that, I would think, in this context. Your Honor, I cannot answer that question. My understanding is that that was not a key in the preamble to the statute. The bottom line is they didn't say anything one way or another about why they didn't include a private right of action for damages. That's true. They did not say. They simply adopted different remedial mechanisms, including giving prisoners an opportunity to make complaints against officers who allegedly do not respond appropriately to claims of sexual assault, and also the remedy of being able to go to the Office of Inspector General and make those claims known as well. But no private right of action. Thirdly, and relatedly, there's another statute that has passed and is another special factor, and that's the Prison Litigation Reform Act in 1996. And of course, as Abbasi pointed out, Congress had specific occasion to consider there whether they wanted to create a damages remedy, and they chose not to do that. They chose not to do it. I thought they actually did the opposite in 42 U.S.C. 1997 E.A., where they specifically required exhaustion, not only in 1983 cases, but also in any other case predicated on federal law. The Supreme Court has interpreted 1997 E.A. to specifically require exhaustion in Bivens cases. So how is it that you are arguing that the PLRA actually reflected congressional intent to not recognize Bivens actions? It seems to me that they did exactly the opposite. I go to what the Abbasi court said, Your Honor, when they say that the court did not include a damages remedy against federal jailers. They did not include that. Okay, it's certainly true. I don't know that Abbasi was applying the criteria in that case to determine whether or not this particular factor would create a new context. After all, Abbasi were very high-level officials. It was a different constitutional right. There were a variety of different considerations. So if I could ask you, how do you in this case, where it really does take front and center stage, how do you apply 1997 E.A. and the Supreme Court case law requiring exhaustion in Bivens cases to argue that this particular factor cuts against the recognition of the Bivens action? Your Honor, recall that the Bivens claims at issue in Abbasi were not limited to those detention policy claims against those high-ranking Department of Justice officials. There was another category of claims, deliberate indifference to abuse brought against the prison wardens. That is the place in Abbasi where the court talks about the Congress not creating a damages remedy against federal jailers in finding in that claim, with regard to that claim against the prison warden, that the context was new. The court made that finding and then remanded the case back to the alternative remedies and other special factors. So in fact, Your Honor, the court did point to that in assessing the new context in connection with that claim against the warden. To proceed through my list of differentiating factors here, first, or I should say, fourthly, different positions of the officers, very different job duties. I believe Judge Hart's alluded to this. You've got medical providers versus prison investigators. Well, but Abbasi didn't identify the difference based on the nature of their, of what they did. It differentiated based on the level in the hierarchy. You mentioned in high-level executives. In this case, isn't it fair to say that these investigators may have different job duties than the guards in Carlson, but they were all relatively low-ranking officers, certainly lower ranking than either the wardens or high-level executives that were at issue in Abbasi? So Your Honor, first, in pointing to the differences here, I'm not necessarily referring to everything in the list that Abbasi said. There are other differences that can be considered. And I think that this distinction is important because it leads into the fifth distinction, which is the guiding standards for how these prison employees, and Abbasi does speak to this, for these prison employees, how they should do their jobs are different. As the court said in Abbasi, it's long made clear that the standard for claims alleging failure to provide medical treatment to a prisoner is deliberate indifference to serious medical needs. But here, Your Honors, there is no similarly clear-cut answer when a prisoner says they feel threatened. The investigators have to conduct a fact-specific analysis. And of course, in this context, addressing claims of threats in the highly volatile prison situation, prison officials can never eliminate all risks. And here, too, is a distinction between Ms. Rios' claims and those in Carlson. My time is well passed out. Well, can I follow up a little bit on Abbasi, Judge Hartz? Yes, please. The section of Abbasi that you're right, it talks about whether the claim against the warden for the abuse of prisoners is an extension of Carlson. And it concludes that it is an extension, and it doesn't recognize it. But when it's discussing that, what it focuses on, in my opinion, anyway, is that we're talking about a claim of inadequate supervision against the warden for the acts of the officers towards the prisoner, which is, if you look at the categories, the level of the officer, the claim against the officer. Here, you don't have the supervisory piece of it. You have claims against the actual investigators for not protecting Ms. Rios from this real threat of physical abuse. Is that a difference that should undermine reliance on this discussion in Abbasi about why it was an impermissible extension of Bivens there to bring the claim against the warden? I'm sorry, long question. First, let me address this, Your Honor. When Judge Buckhawk and I were discussing this, I was focused on simply bringing to the court's attention the point that among those factors, or among those issues that the court looked at in finding a new context as to those claims against the warden was the reference to not having accountants to damages remedy in the Prison was my focus there. To be sure, there would be differences between those claims that were brought against prison wardens and those here that Ms. Rios has alleged. But again, the level of the officers is not necessarily determinative, although it can be, of course, a difference where small differences matter. Okay, I understand. Thank you. Any other questions from the panel? I do have one, if you don't mind, Judge Harts. With regard to the judicial guidance, you were alluding to that in your final minutes and you addressed this in your brief. That argument, quite frankly, surprised me a little bit because, and maybe I'm misinterpreting your argument, but I interpreted your brief and I interpreted what you just said a few moments ago as suggesting that we have relatively little judicial guidance, to use the terminology I think Abbasi used, to determine whether or not this particular constitutional right has been violated. And in the failure to protect context, now you were referring to the few Supreme Court cases. Obviously, I would assume that investigative officials for prisons would also be getting guidance from magistrate judges, district judges, our court, and there are, since farmers, there have been, I don't know how many, probably hundreds of published opinions from our court, certainly, probably in the thousands, I'm guessing, I don't know, I've never counted them, in opinions from district judges, at least within our circuit. This is one of the most heavily litigated areas in our Constitution, I think, in terms of the judicial guidance that would affect prison officials, prison guards, investigators, in determining how to apply the farmer's constitutional right. And now you're saying that, well, you know, maybe this is a very difficult position for investigators. I doubt anybody would question that. But Abbasi doesn't refer to that. Abbasi refers to the level of judicial guidance that would affect this, the application of this right. And by gosh, there is extraordinary judicial guidance involved. But have I, maybe I've misunderstood your argument. Your Honor, I think the point goes to the fact that in this particular context, and remember, the rights cannot be defined at a high level of generality, for example, under the qualified immunity analysis. In this particular context, you have investigators who have come to. And in that context, I would submit there is not a great deal of judicial guidance. In other words, what we do see, though, is when prison officials undertake an investigation, and they make a reasonable conclusion about the matter, that should entitle them to qualified immunity. But Your Honor, the point is here that in applying that, in looking at individual cases, case by case, a particular threat, evaluating the whole contest is a very fact-specific inquiry, for which, no, it is, there is not significant judicial guidance, nor could there be, in contrast with a deliberate indifference to medical care claim. When a medical provider, look, the inmate has a broken leg. You need to treat that. That seems clear. I think that is the distinction that we are focused here on, Your Honor. Thank you. Thank you. Ms. Bixby, I'll give you another two minutes. Thank you, Your Honor. Defendants ask this court to create a circuit split based on nothing more than trivial differences, not meaningful ones. I would urge this court to follow the Third Circuit's decisions in Bistrian and Shorter, and reverse the district court here. I'm happy to answer any further questions that the court has. We never complain when an attorney takes less than the time given. So, thank you very much, counsel. Case is submitted. Counselor excused.